IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JSA TECHNOLOGIES, INC., )
         )  C.A. No. _____
    Plaintiff,  )
         )
    v.     )  **JURY TRIAL DEMANDED**
         )
DATA FUTURES, INC.  )
         )
    Defendant.  )

## **COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff JSA Technologies, Inc. ("JSA"), for its complaint against Defendant

Data Futures, Inc. ("Data Futures"), alleges and states as follows:

### **THE PARTIES**

1. JSA is a corporation organized and existing under the laws of the State of

Delaware, having a principal place of business at 201 Main Street, Suite 1320, Fort Worth, Texas

76102.  JSA is a leading software development company that pioneered online deposit

functionality for student account systems offered by universities and colleges.  JSA provides

campuses with patented web-access solutions for their account systems, such as its StudentLink,

and Transaction Gateway products, which allow anyone with access to the Internet to deposit

money into an account linked with a student.  With its MerchantLink offering, JSA enables

students to make purchases with local merchants and pay with their student account.  Since 1998,

JSA has served nearly 100 clients throughout North America, including colleges, universities,

and a number of corporate clients.

2. Data Futures is a corporation organized and existing under the laws of the

Kentucky, and having its principal place of business in Harlan, Kentucky.

## JURISDICTION AND VENUE

3.    JSA brings this action pursuant to the Patent Laws of the United States, 35

U.S.C. § 1 *et seq.*  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§

1331(federal question jurisdiction) and 1338(a) (original jurisdiction under patent laws).

4.    Personal jurisdiction over Defendant Data Futures is proper and comports

with the United States Constitution and Section 3104 of the Delaware Code because, on

information and belief, Data Futures has committed acts of patent infringement in the United

States, including within the State of Delaware, such that it has purposefully availed itself of the

privilege of conducting activities within this District, including but not limited to directing sales

and marketing of the accused offerings described herein to Delaware schools.  In particular, on

information and belief, Data Futures' activities in this regard have taken place at least in

connection with implementing the accused offerings in computer systems of schools that

participate in the Schools Interoperability Framework Association, of which the State of

Delaware is a member and participant.

5.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c)

(general venue statute) and 28 U.S.C. §1400(b) (venue for patent infringement claims).


## PATENT IN SUIT

6.    On November 8, 2005, U.S. Patent No. 6,963,857 (the "Johnson '857

patent"), entitled "Network-Accessible Account System," duly and legally issued with David M.

Johnson, the founder and President of JSA, named as the inventor.  A true and correct copy of

the Johnson '857 patent is attached as Exhibit A.

7.    JSA is the owner by assignment of all legal rights, title, and interests in and to the Johnson '857 patent, including the right to bring this suit for damages and injunctive relief for infringement thereof.

## COUNT I

### (Patent Infringement)

8.    JSA incorporates by reference paragraphs 1 - 7 above as though fully set forth herein.

9.    Data Futures is a supplier of cafeteria management systems for the kindergarten through high school markets.  One of Data Futures' offerings is the LunchBox K-12 products and services ("LunchBox").  According to the LunchBox website, available at www.lunchbox-k12.com/Pages/SiteManager.html, LunchBox is a single software program that includes a school's entire student data base and inventory, operates a school's point of service (*e.g.* lunch room), automates every daily manager task, and stores all recipes.  A true and correct copy of the LunchBox web page is attached hereto as Exhibit B.

11.    The LunchBox web site also specifies that the software provides parents of school children instant, real-time access to the student's buying history, and the tools to make real-time deposits via the Internet.  Prior versions of Data Futures' LunchBox web site included a detailed explanation that the "Internet Deposit" feature "delivers funds to student accounts conveniently and securely within 3 minutes."  The Internet Deposit feature, moreover, was described as "a key component of the complete school food service software solution offered by LunchBox."  True and correct archived pages from the previous version of the LunchBox website are attached hereto as Exhibit C.

12.    On information and belief, Data Futures has shown a willful and reckless disregard for JSA's patent rights. After being provided actual notice of the Johnson '857 patent, Data Futures denied having any functionality to allow a user to deposit funds into an account over the Internet. As shown in the web pages attached to this Complaint as Exhibit C, however, Data Futures had earlier touted the Internet Deposit feature of the LunchBox software as "a key component of the complete school food service software solution offered by LunchBox." On information and belief, Data Futures sought to hide this from JSA, believing that the prior version of its web site would be inaccessible to JSA. When provided and confronted with the archived web pages attached at Exhibit C, Data Futures did not deny their authenticity or the truth of the statements contained in them.

13.    On information and belief, Data Futures has willfully infringed and continues to willfully infringe claims of the Johnson '857 patent, in this judicial district and elsewhere in the United States, by making, using, importing, offering for sale, and/or selling products and/or services as claimed in the Johnson '857 patent, including without limitation its LunchBox products and/or services, and/or are inducing or contributing to such infringement in violation of 35 U.S.C. § 271.

14.    Upon information and belief, Defendant has had constructive notice of the Johnson '857 patent due to JSA's systematic and continuous marking of patented websites with U.S. Patent No. 6,963,857, and has had actual notice of the patent since late September 2007.

15.    JSA has been damaged as a result of the above-referenced infringement of the Johnson '857 patent in an amount to be determined at trial, and has suffered and will continue to suffer irreparable injury unless Defendant is enjoined from infringing the Johnson '857 patent.

**WHEREFORE**, JSA Technologies, Inc. prays for the following relief:

a.      A judgment that Defendant Data Futures has infringed the Johnson '857 patent by making, using, importing, offering for sale and/or selling infringing products and/or services, including the LunchBox offerings;

b.      A declaration that the manufacture, use, import, offer for sale and/or sale of the LunchBox offerings infringe the Johnson '857 patent;

c.      A preliminary and permanent injunction enjoining and restraining Data Futures and, its officers, directors, employees, agents, assigns, servants, subsidiaries, affiliates, and any other person in active concert or participation with any of them, from further acts of infringement, contributory infringement and active inducement of infringement of the Johnson '857 patent, including but not limited to exploiting, manufacturing, importing, exporting, advertising, offering for sale, selling, distributing, moving, shipping, sampling, or promoting any infringing products, including without limitation the accused LunchBox offerings;

d.      An accounting and award of damages against Data Futures for any and all damages allowable by law, including but not limited to (a) monetary damages sustained by JSA as a result of Data Futures' acts of infringement, contributory infringement and/or active inducement of infringement, (b) treble damages pursuant to 35 U.S.C. § 284, (c) a multiple of Data Futures' profits, (d) statutory damages, (e) costs and prejudgment interest, (f) attorney's fees, and (g) punitive damages;

e.      A finding that this is an exceptional case and an order awarding reasonable attorneys fees to JSA under 35 U.S.C. § 285; and

f.      Any and all such other and further relief as this Court may deem appropriate.

**JURY DEMAND**

Plaintiff JSA hereby demands trial by jury on all issues triable to a jury.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: _____

Daniel J. Furniss
TOWNSEND AND TOWNSEND AND
CREW LLP
379 Lytton Ave.
Palo Alto, CA
94301-1431
(650) 326-2400

Richard S. Meyer
Jonathan D. Link
TOWNSEND AND TOWNSEND AND
CREW LLP
1301 K Street, NW
Ninth Floor, East Tower
Washington, DC 20005
(202) 481-9911

Philip A. Rovner (#3215)
David E. Moore (#3983)
Hercules Plaza
P. O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
provner@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff*
*JSA Technologies, Inc.*

Dated:  February 26, 2008

850341

# EXHIBIT A



US006963857B1

(12) **United States Patent**
Johnson

(10) Patent No.: **US 6,963,857 B1**
(45) Date of Patent: **Nov. 8, 2005**

(54) **NETWORK-ACCESSIBLE ACCOUNT SYSTEM**

(75) Inventor: **David Matthew Johnson**, Boston, MA (US)

(73) Assignee: **JSA Technologies**, Fort Worth, TX (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 09/358,196

(22) Filed: Jul. 12, 1999

(51) Int. Cl.$^7$ ............................................ G06F 17/60
(52) U.S. Cl. ........................... 705/39; 705/35; 705/41
(58) Field of Search ............................... 705/35, 39, 41; 380/24, 33

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,745,886 A | 4/1998 | Rosen | .......................... | 750/39 |
| 5,778,067 A | 7/1998 | Jones et al. | .................... | 308/24 |
| 5,832,453 A | 11/1998 | O'Brien | .......................... | 705/6 |
| 5,884,288 A | 3/1999 | Chang et al. | .................. | 705/40 |
| 5,903,880 A | 5/1999 | Biffar | .......................... | 705/39 |
| 5,905,976 A | 5/1999 | Mjolsnes et al. | ............. | 705/39 |
| 5,915,023 A | 6/1999 | Bernstein | ..................... | 380/24 |
| 5,920,629 A | 7/1999 | Rosen | .......................... | 380/24 |
| 5,920,847 A | 7/1999 | Kolling et al. | ................. | 705/40 |

OTHER PUBLICATIONS

The Campus Card Conundrum, Feb. 1998, Card Technology.*

* cited by examiner

Primary Examiner—Richard Weisberger
(74) Attorney, Agent, or Firm—McGuireWoods LLP

(57) **ABSTRACT**

The present invention is directed to methods of, and systems for, allowing an account participant to add value via a wide-area network to a first account from a second account. A first account server coupled to a wide-area network supports the first account. In a preferred embodiment the wide-area-network-accessible value transfer station (VTS) includes a central processing unit for executing instructions, and a memory unit. The memory unit includes an operating system, software for receiving from a participant via the network a) second account identification information, and b) a value that the participant desires to transfer to the first account from the second account, second account verification software for receiving the second account identification number from said receiving software and for verifying that the second account authorizes the transfer of the specified value, and value transfer software for receiving a value from the receiving software, for receiving a verification from the verification software, and for transferring the specified value to the first account from the second account if the verification is received. The wide-area-network-accessible VTS further includes conductive interconnects connecting the central processing unit and the memory unit to allow portions of the wide-area-network-accessible value transfer station to communicate and to allow the central processing unit to execute the software in the memory unit.

**29 Claims, 9 Drawing Sheets**





**FIG. 1**



*FIG. 2*



**FIG. 3**

JSA TECH. IN IT'S CONTINUING COMMITMENT TO EXCELLENCE
THROUGH THE USE OF LEADING EDGE TECHNOLOGY, HAS
DEVELOPED THIS SITE FOR THE CONVENIENCE OF
OUR ESTEEMED STUDENTS, PARENTS AND FACULTY.

THROUGH THIS SITE, ANY JSA-ONE-CARD HOLDER CAN TRANSFER
FUNDS ONTO THE JSA-ONE-CARD, OR OBTAIN BALANCE AND
ACCOUNT INFORMATION. THE JSA-ONE-CARD IS OUR
UNIVERSITIES "FRONT END" TO AN IDENTIFICATION CARD
SYSTEM. THIS WEB SERVER DOES NOT REPLACE ANY
IDENTIFICATION CARD SYSTEM SOFTWARE, BUT IS AN
"ADD ON" TO YOUR EXISTING SYSTEM. NO CONFIGURATION
BEYOND CREATING A NEW USER ON YOUR IDENTIFICATION CARD
IS REQUIRED BY YOUR SCHOOL.

| I AM USING A BROWSER CAPABLE OF USING SSL TECHNOLOGY FOR SECURELY TRANSMITTING INFORMATION OVER THE INTERNET. | MY BROWSER IS NOT CAPABLE OF USING SSL TECHNOLOGY BUT I WILL PROCEED ANYWAY UNDERSTANDING THE RISKS INVOLVED. |
|---|---|
| ENTER SECURE SITE | ENTER NON-SECURE SITE |

COPYRIGHT 1998 BY JSA TECHNOLOGIES INC.

JSA TECHNOLOGIES INC.
PHONE: 879.JSA.TECH/879.572.8324
HOME | CONTACT US | CONTACT US | ORDER | INDEX | E-MAIL

# FIG. 4

*FIG. 5*

① ⑤ Ⓐ
TECHNOLOGIES

**JSA TECH SERVICES AUTHENTICATION**
YOU HAVE ACCESS TO THIS SERVICE IF YOU ARE A VALID JSA-ONE-CARD CARD HOLDER

ONCE YOUR JSA-ONE-CARD ACCOUNT HAS BEEN VERIFIED YOU WILL BE ABLE TO

○ UPDATE:
  ○ FOOD SERVICES ACCOUNT
  ○ GENERAL SPENDING ACCOUNT
○ VIEW:
  ○ FOOD SERVICES ACCOUNT INFORMATION
  ○ GENERAL SPENDING ACCOUNT INFORMATION
  ○ ACCOUNT OUTSTANDING BALANCE
  ○ TRANSACTION HISTORY

LAST NAME: _____    FIRST NAME: _____

JSA-ONE-CARD NUMBER: _____

CONTINUE

COPYRIGHT 1998 BY JSA TECHNOLOGIES INC.

JSA TECHNOLOGIES INC.
PHONE: 879.JSA.TECH/879.572.8324
HOME | CONTACT US | CONTACT US | ORDER | INDEX | E-MAIL

**JSA TECH SERVICES AUTHENTICATION**
YOUR ACCESS HAS BEEN VERIFIED

YOUR JSA-ONE-CARD ACCOUNT HAS BEEN VERIFIED.
o CARD HOLDER STEEL, ERIC.
o CARD NUMBER 00001

o UPDATE:
    o O FOOD ACCOUNT(DINING HALLS ONLY)
    o O GENERAL SPENDING (BOOKSTORE, LIBRARY, VENDING, ETC.)
o ACTION:
    o O TRANSFER FUNDS TO JSA-ONE-CARD
    o O DISPLAY ACCOUNT BALANCE

CONTINUE

JSA TECHNOLOGIES INC.
PHONE: 879.JSA.TECH/879.572.8324
HOME | CONTACT US | CONTACT US | ORDER | INDEX | E-MAIL

*FIG. 6*

**JSA TECH SERVICES AUTHENTICATION**
YOUR ACCESS HAS BEEN VERIFIED

YOUR JSA-ONE-CARD ACCOUNT HAS BEEN VERIFIED.

○ ACCOUNT BALANCE
○ $254.21

THANK YOU

COPYRIGHT 1998 BY JSA TECHNOLOGIES INC.

JSA TECHNOLOGIES INC.
PHONE: 879.JSA.TECH/879.572.8324
HOME | CONTACT US | CONTACT US | ORDER | INDEX | E-MAIL

*FIG. 7*

**FIG. 8**

JSA TECH SERVICES AUTHENTICATION
YOUR ACCESS HAS BEEN VERIFIED

YOUR JSA-ONE-CARD ACCOUNT HAS BEEN VERIFIED.

CREDIT CARD TYPE: -SELECT-

CREDIT CARD NUMBER:

EXPIRATION MONTH: -SELECT-

EXPIRATION YEAR: -SELECT-

US DOLLAR AMOUNT $ -SELECT-

CONTINUE

COPYRIGHT 1998 BY JSA TECHNOLOGIES INC.

JSA TECHNOLOGIES INC.
PHONE: 879.JSA.TECH/879.572.8324
HOME | CONTACT US | ORDER | INDEX | E-MAIL



*FIG. 9*

US 6,963,857 B1

**1**

## NETWORK-ACCESSIBLE ACCOUNT SYSTEM

### COPYRIGHT NOTICE

Copyright, 1998, 1999, JSA Technologies, Incorporated. A portion of the disclosure of this patent document contains material which is subject to copyright protection. The copyright owner has no objection to reproduction by anyone of the patent document or the patent disclosure, as it appears in the U.S. Patent and Trademark Office patent file or records, but otherwise reserves all copyright rights whatsoever.

### CROSS-REFERENCE TO RELATED APPLICATIONS

Not Applicable

### STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH

Not Applicable

### REFERENCE TO MICROFICHE APPENDIX

Not Applicable

### BACKGROUND OF THE INVENTION

This invention relates to a wide-area-network-accessible (WAN-accessible) account system and, more particularly, to a system for allowing an account participant to access a account, e.g., to transfer value to a first account from a second account, via a device attached to a WAN.

Single card account systems, such as university identification card systems, perform a variety of useful functions. In the university context, a university community member can use their identification card for identification and for facilities access. Importantly, a cardholder can also use their card purchase products and/or services from a variety of sources such as copying machines, vending machines, dining services, the university book store, library services, and athletic department services. Other institutions such as large companies can use a single card account system in a similar way.

However, universities and other institutions presently provide staff, office space, and facilities to assist community members in depositing money into a particular account. Furthermore, community members typically submit their money during business hours or use regular mail. As a result there is often a significant lag between the first occurrence of a desire to add a specified amount to a particular account and the crediting of that specified amount to the particular account.

For the foregoing reasons, it is an object of the invention to provide a value transfer system that allows an authorized community member greater access to the community's single card system. It is another object of the invention to provide ubiquitous or global access (e.g., from a variety of personal computers and other personal digital assistants connected to the Internet) to a value transfer system. It is still another object of the invention to provide access to a community's value transfer system twenty-four-hours-a-day, three-hundred-sixty-five-days-a-year. Further, it is another object of the invention to provide cardholders instant access to their deposited funds.

Other objects of the invention will in part be obvious and will in part appear hereinafter.

**2**

### SUMMARY OF THE INVENTION

The present invention is directed to WAN-accessible systems for allowing an account participant to access an account system, e.g., to add value to a first account from a second account. A first account server coupled to a network supports the first account. One version of a system according to the invention includes a WAN-accessible value transfer station (VTS) coupled to the network and coupled to the first account server. The WAN-accessible VTS includes: 1) a module for receiving from a participant a) second account identification information, and b) a value that the participant desires to transfer to the first account from the second account; 2) a module for verifying that the second account authorizes the transfer of the value; and 3) a module for transferring the value to the first account from the second account.

In a preferred embodiment the WAN-accessible VTS includes a central processing unit for executing instructions, and a memory unit. The memory unit includes: 1) an operating system; 2) software for receiving from a participant via the network a) second account identification information, and b) a value that the participant desires to transfer to the first account from the second account; 3) second account verification software for receiving the second account identification information from the receiving software and for verifying that the second account authorizes the transfer of the value; and 4) value transfer software for receiving a specified value from the receiving software, for receiving a verification from the verification software, and for transferring the value to the first account from the second account if the verification is received. The WAN-accessible VTS further includes conductive interconnects connecting the central processing unit and the memory to allow portions of the WAN-accessible VTS to communicate and to allow the central processing unit to execute the software in the memory unit.

Another version of the invention provides a method, performed in a server, of adding value to a first account by transferring value from a second account. The method includes the steps of: 1) receiving from a participant via the network a) account identification information for identifying a second account, and b) a value that the participant desires to transfer to the first account from the second account; 2) verifying that the second account authorizes the transfer of the value; and 3) transferring the value to the first account from the second account.

Yet another version of the invention provides a computer data signal embodied in a carrier wave. The computer data signal includes program code which allows for a card account participant to remotely add value to a first account from a second account. A first account server coupled to a network supports a first account. The program code includes software for receiving from a participant a) first account identification information, b) second account identification information, and c) a value that the participant desires to transfer to the first account from the second account, second account verification software for verifying that the second account authorizes the transfer of the specified value, and value transfer software for transferring the specified value to the first account from the second account.

### BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and other objects of this invention, the various features thereof, as well as the invention itself, may be more fully understood from the following description, when read together with the accompanying drawings in which:

US 6,963,857 B1

3

FIG. 1 is a schematic diagram of a preferred embodiment of a WAN-accessible value transfer system according to the invention;

FIG. 2 is a schematic diagram of the value transfer server of FIG. 1;

FIG. 3 is a flow chart for one embodiment of the operation of the WAN-accessible value transfer system of FIG. 1;

FIG. 4 is one embodiment of a home page for the web site of the WAN-accessible value transfer system of FIG. 1;

FIG. 5 is one embodiment of a login or access screen for the web site of the WAN-accessible value transfer system of FIG. 1;

FIG. 6 is one embodiment of a main menu screen for the web site of the WAN-accessible value transfer system of FIG. 1;

FIG. 7 is one embodiment of a first account balance screen for the web site of the WAN-accessible value transfer system of FIG. 1;

FIG. 8 is one embodiment of a second account information input screen for the web site of the WAN-accessible value transfer system of FIG. 1; and

FIG. 9 is schematic diagram of an alternative embodiment of a WAN-accessible value transfer system according to the invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention is directed to WAN-accessible systems for allowing an account participant to access an account, e.g., to add value to a first account from a second account. With reference to FIGS. 1, 2, and 9, one embodiment of a WAN-accessible value transfer system according to the invention includes a first account server 20 coupled to a WAN, e.g., the Internet 17. A WAN-accessible VTS 11 is coupled to the WAN 17 and to the first account server 20. In a preferred embodiment, the first account server 20 is coupled to the WAN 17 through the WAN-accessible VTS 11.

A preferred embodiment of the WAN-accessible VTS 11 includes two servers 13, 15. A preferred embodiment of a WAN-accessible VTS includes a central processing unit 38 connected to a memory unit 13a. The memory unit 13a includes an operating system 25 and a plurality of modules including an information receiving module 35, an account verification module 36, a value transfer module 37. The operating system 25 can be Debian GNU/Linux.

The information receiving module 35 receives information from a participant via the network. The information includes a) a second account identification number, and b) a value that the participant desires to transfer to the second account from the first account. The account verification module 36 receives the second account identification number from the information receiving module and verifies that the second account authorizes the transfer of the specified value. The value transfer module 37 then transfers the specified value from the second account to the first account if authorization is received from the account verification module 36.

Thus, a participant or user 10 can remotely add value to a first account, e.g., to a student identification system account, from a second account, e.g., a credit card account. The user 10 can add value from a computer 18, e.g., a remote computer, via a WAN, e.g., via the Internet.

The value station server 13, 15 can include a variety of other modules including data encryption 24, name recogni-

4

tion 31, reporting 32, and system monitoring 34 modules. In addition, the VTS server includes databases 39a, 39b, 39c. These databases store transaction, reporting, and system monitoring information. Preferably, the system includes a backup system, e.g., backup tape drives 29.

Operating systems, such as windows, typically do not include firewall protection. Thus, firewall software is added on top of the operating system. The layering of firewall software on top of the operating system reduces the speed and reliability of the resulting system. As noted above, according to a preferred embodiment, the operating system 25 can be Debian GNU/Linux. Firewall software is integrated into the Linux operating system kernel, providing low-level integration. The low-level integration provides a fast and reliable network solution, without extra software packages that can fail or be dismantled.

In addition, a preferred embodiment of firewall software is configured not to respond to any network traffic that is not specifically designated for the web-server. Computer hackers can begin an attack on an Internet-accessible system by initiating communication with the system's server. For example, the hacker can send a request to a system server asking for the addresses of all the computers on the network. A preferred embodiment of a WAN-accessible value transfer system will not respond to such a request. Thus, the hacker is unable to identify the server or any of the transmission control protocol (TCP), user datagram protocol (UDP), or Internet control message protocol (ICMP) openings, making the server invisible to the hacker.

The firewall software also protects against advanced attacks such as IP spoofing and denial of service attacks, e.g., SYN flooding (flooding the server with so much information that the server can not respond). According to one type of denial of service attack, a hacker can submit an overwhelmingly large series of requests to the target server. One method for protecting against such an attack is to require interactive communication on the first request in the series before responding to other requests in the series.

According to a preferred embodiment, the data encryption module 24 posts account information only to Secure Socket Layer (SSL) encrypted pages, so that sensitive information remains private and unknown to attackers listening on the network. In addition, the system can require a participant to complete the transaction within a pre-selected period of time. Thus account holders can safely use a WAN-accessible value transfer system at public kiosks and computer labs without having to worry about their information being retrieved by subsequent users. Furthermore, a preferred embodiment of the system will not allow a participant to submit the exact same transaction twice within a pre-selected period of time. Thus, the system helps to prevent cardholders from submitting duplicate transactions.

The reporting module 32 contains a number of reporting features to help account system administrators track transactions and cardholder usage. The report interface can be HTML based, providing a simple interface for account system administration staff. Reports are secured via SSL so that report information is confidential between the server and client. The reports can be customized to provide a variety of information including sales, time of day usage, length of usage, and site navigation information. The reports can also include verification information such as individual customer IP addresses.

With reference to FIG. 3, in operation, a preferred embodiment of the invention performs the following steps. The WAN-accessible value transfer system determines 41

US 6,963,857 B1

5

whether the user is authorized to access the first account, e.g., a university identification system. If the user is authorized, the user is allowed to select an action 42 including checking an account balance 44 or adding value to a first account 43. If the user decides to add value to an account, the system receives 45 from the user or participant, a) information to identify a second account, e.g., a credit card number, and b) a value that the participant desires to transfer from the second account to the first account. The system then contacts 46 the second account and requests 47 a credit authorization number from the second account. If the second account grants 48 a credit authorization number, then the system transfers 49 the specified value from the second account to the first account. Otherwise, the system can return the user to a web page that informs the user that the transaction was not authorized and again requests the user to select an action. Optionally, the system can then update 50 ancillary databases, e.g., the reporting and system monitoring databases, regarding the transaction.

With reference to FIGS. 4–8, a preferred embodiment of a WAN-accessible value transfer system provides a web site with a variety of web pages. With reference to FIG. 4, the home page of the WAN-accessible VTS web site can inform the user of the general character of the WAN-accessible VTS and of the level of security possible given the user's computer system. If the user decides to continue, the user comes to an HTML form page, as shown in FIG. 5, for logging in to the system.

Once the user has successfully logged in, the user comes to a web page, as shown in FIG. 6, providing a variety of possible actions, e.g., check an account balance or transfer funds into the account, that the user can perform within the system. If the user decides to check on the first account balance, the user comes to a web page, as shown in FIG. 7, providing a first account balance.

If the user decides to transfer funds from a second account to a first account, the user comes to a web page, as shown in FIG. 8, providing several fields, including some with selection menus, that the user completes. The fields relate to the second account and to the amount of funds that the user would like to transfer.

More generally, the VTS web site provides cardholders unlimited viewing of their transactions and current balances. By providing cardholders access to their account information, institutions, e.g., universities, eliminate the need to mail costly paper versions of monthly statements. Currently, if an organization runs a debit card system, that organization is classified under U.S. banking regulations in which they must provide statements to all cardholders. Statements have traditionally been provided by printing and mailing statements to all cardholders, which can be costly, difficult, and error prone. The VTS web site eliminates the need for printed statements, and thus reduces the costs of postage and labor associated with the traditional paper reporting methods. Using the VTS web site also reduces the need to answer cardholder inquiries regarding balances and account transactions.

It will thus be seen that the objects set forth above, among those made apparent from the preceding description, are officially attained. Since certain changes may be made in the above constructions without departing from the scope of the invention, it is intended that all matter contained in the above description and shown in the accompanying drawings be interpreted as illustrative and not in a limiting sense.

It is also to be understood that the following claims are intended to cover all generic and specific features of the

6

invention described therein, and all statements of the scope of the invention which as a matter of language might be the to fall therebetween.

What is claimed is:

1. A system for allowing a user to add a value via a wide-area network (WAN) to a first account of a first network system of a participant from a second account supported by a different network system, the first account being supported by a first account server coupled to the WAN, said value-adding system comprising:

   a WAN-accessible value transfer station (VTS) coupled to said WAN and coupled to the first account server, said WAN-accessible VTS including

   1) means for receiving from one of a general purpose computer and a personal digital assistant (PDA) operated by the user a) second account identification information, and b) the value that the user desires to transfer to said first account from said second account,

   2) means for verifying that said second account authorizes the transfer of said value, and

   3) means for transferring said value to said first account from said second account.

2. The system according to claim 1, wherein said WAN-accessible VTS comprises

   a central processing unit for executing instructions,

   a memory unit comprising

      an operating system,

      software for receiving from the user via the WAN a) second account identification information, and b) the value that the user desires to transfer to said first account from said second account,

      second account verification software for receiving the second account identification information from said receiving software and for verifying that the second account authorizes the transfer of said value, and

      value transfer software for receiving the value from said receiving software, for receiving a verification from said verification software, and for transferring said value to said first account from said second account if said verification is received, and

   conductive interconnects connecting said central processing unit and said memory unit to allow portions of the WAN-accessible VTS to communicate and to allow the central processing unit to execute the software in the memory unit.

3. The system according to claim 2, wherein said memory unit further comprises

   firewall software for providing security for the system.

4. The system according to claim 3, wherein said operating system comprises an operating system kernel and wherein said firewall software is integrated into the operating system kernel.

5. The system according to claim 2, wherein said memory unit further comprises

   security socket layer data encryption software for encrypting data for transfer outside of said system.

6. The system according to claim 2, wherein said receiving software further comprises

   software for receiving first account identification information.

7. The system according to claim 2, wherein said memory unit further comprises

   name recognition software for receiving first account identification information and for matching a name associated with the first account identification information with the name of the participant.

US 6,963,857 B1

7

**8.** The system according to claim 2, wherein said memory unit further comprises

system monitoring software for monitoring the system.

**9.** The system according to claim 8, wherein said system further comprises

means for emitting sound to report system status, said means being controlled by said system monitoring software.

**10.** The system according to claim 2, wherein said system further comprises

small computer system interface (SCSI) drives connected to said central processing unit.

**11.** The system according to claim 2, wherein said system further comprises

backup drives coupled to said central processing unit.

**12.** The system according to claim 2, wherein said system further comprises at least one uninterruptable power supply coupled to said WAN-accessible VTS server.

**13.** The system according to claim 1, wherein said first account is a student identification card account.

**14.** The system according to claim 1, wherein said second account is selected from the group of accounts consisting of debit accounts and credit card accounts.

**15.** The system according to claim 1, wherein said first account server is coupled to the WAN through said WAN-accessible value transfer station.

**16.** The system according to claim 1, wherein the system further comprises a second WAN-accessible value transfer station.

**17.** In a server, a method of adding a value to a first account supported by a first computer network by transferring value from a second account supported by a second computer network different from the first computer network, the method comprising the steps of:

receiving from one of a general purpose computer and a personal digital assistant (PDA) operated by a user via a wide-area network a) second account identification information for identifying the second account, and b) the value that the user desires to transfer to said first account from said second account,

verifying that said second account authorizes the transfer of said value, and

transferring said value to said first account from said second account.

**18.** The method of claim 17, wherein said receiving step further comprises receiving from the user first account identification information for identifying said first account of an account participant.

**19.** The method of claim 18, wherein said method further includes the step of receiving said account participant's name.

8

**20.** The method of claim 19, wherein said method further includes the step of confirming that said first account identification information is associated with the name of the account participant.

**21.** A computer data signal embodied in a carrier wave comprising

program code which allows for a card account participant or authorized user to use the Internet to add value to a first account from a second account, the first account being supported by a first account server coupled to the Internet, the first and second accounts being supported by different computer networks, said program code including

software for receiving from the participant or user a) first account identification information, b) second account identification information, and c) the value that the participant desires to transfer to said first account from said second account,

second account verification software for verifying that the second account authorizes the transfer of said value, and

value transfer software for transferring said value to said first account from said second account.

**22.** The computer data signal of claim 21, wherein the software for receiving from the participant first account identification information, second account information, and value includes software for receiving said first account information, said second account information, and said value from a device connected to the Internet.

**23.** The computer data signal of claim 22, wherein the device connected to the Internet includes one of a general purpose computer and a personal digital assistant (PDA).

**24.** The system of claim 1, wherein said WAN is a non-proprietary network.

**25.** The system of claim 1, wherein the first network system is a card account system.

**26.** The system of claim 1, wherein the different network system includes a financial network system.

**27.** The system of claim 1, wherein the user and the participant is the same person.

**28.** The system of claim 1, wherein said receiving means receives said second account information and said value at a Web site.

**29.** The system of claim 1, wherein access to the value transferred to said first account from said second account occurs instantaneously after the system receives the second account information and value that the user desires to transfer.

\*  \*  \*  \*  \*

# EXHIBIT B

LunchBox Site Manager Suite

**LunchBox Site Manager Suite has everything you need for a food service operation that exceeds expectations...**

Imagine a single software program that includes your entire student data base and every item you have in inventory, operates your POS and automates every daily manager task, stores all of your recipes and is approved by the USDA, gives Mom and Dad instant, real-time access to their student's buying history and the tools to make real-time deposits via the Internet and produces your monthly claim report! What if this program is so advanced that it updates itself and lets every person in your district use it from anywhere in your district and even from home?

**Home**    **About Us**    **Contact Us**    **Links**    **Conferences**



# EXHIBIT C



Home    Data Futures    Contact Us    Links    Support

Technology    Shows    Change Request Form    Business Partners







Lunchbox USDA Point of sale Pos Pos system Free and Reduced Inventory Internet Deposits Nutritional Analysis Menus Procurement Applications School Lunch Lunch lines
School food service

## Your Complete SIF-Certified School Software Solution!

**LunchBox** is an exceptional food service management tool for K-12 school districts. A complete software suite that offers the most useful technology for the school food service community, **LunchBox** includes fast and user-friendly **Point-of-Sale** processing with **POS Back Office** to make reporting trouble-free and accurate. The **Free and Reduced** module simplifies the application process and interfaces with a host of application scanning products. **Inventory and Procurement** automates bidding and streamlines ordering. **Internet Deposit** delivers funds to student accounts conveniently and securely within 3 minutes. The **Menus and Nutritional Analysis** module is USDA-approved and the first school food service software to be certified for CN 10. A real-time, web-based **Site Manager** module puts the Food Service Director in the driver's seat, providing centralized reporting, control and oversight of the entire district.

Managers, Directors and State Auditors agree that **LunchBox** assures compliance and maximizes profitability!



### LunchBox

### Internet Deposit:

LunchBox Internet Deposit gives parents access to student accounts. Mom or Dad can deposit money from work or home. Within a few minutes the student's account is updated and ready for purchases. Internet Deposit is convenient, fast and secure. The software utilizes today's preferred Internet payment provider to deliver deposits to student accounts.

**With Internet Deposit you can:**

• Give the parent access to the student's current account balance for viewing and supplementing.

• Provide access to the student's previous purchases for viewing and printing.

• Allow parents to set spending limits on a la carte purchases.

• Speed up the movement of lunch lines and boost participation.

Use the power of the Internet. Deliver today's technology to your district. Parents and students alike will appreciate the convenience and easy accessibility of Internet Deposit.

The Internet Deposit module is a key component of *the complete school food service software solution* offered by LunchBox. For more information about LunchBox, please call 1.800.266.8224.

LunchBox LunchView & Internet Deposit                    http://www.lunchbox-k12.com/Pages/LunchView.html

Are you ready to partner with parents in the fight against childhood obesity? Is the cashless cafeteria part of your long-term strategy?

Take the first giant step toward cashless cafeterias with LunchView. On-line deposits to student accounts are immediately available at the POS in real time. And it all happens without your staff having to lift a finger!

Bring the electronic revolution to your cafeterias. Simplify cash flow. "Cold" checks become a non-issue. Managers don't have to record student deposits or handle these funds. With fewer line items there's less room for error on bank deposits.

Join forces with parents to fight obesity and promote nutritional eating habits. LunchView empowers parents to monitor students' eating history, impose spending limits and to control the a la carte items they purchase. And parents will love the fact that they can accomplish this from home or office!

**Home    About Us    Contact Us    Links    Conferences**

SOFTWARE
Site Manager Suite
Free & Reduced
Online Apps
Spending
Inventory
Menus
Nutri-Calc
Nutritional Analysis
POS
Cashless Cafeteria
Cashless Vending
E-Cash flow
POS Back Office
SIF
Back-Up Solution
HARDWARE
CUSTOMER CARE

Embrace the electronic revolution and simplify cash flow!

LUNCHVIEW & INTERNET DEPOSIT

1 of 1                                                                              11/26/2007 3:07 PM

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JSA TECHNOLOGIES, INC.

## DEFENDANTS

DATA FUTURES, INC.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Philip A. Rovner, Esq. (#3215)  provner@potteranderson.com
Potter Anderson & Corroon LLP, Hercules Plaza
P.O. Box 951, Wilmington, DE  19899
(302) 984-6000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury— Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [x] 830 Patent | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | [ ] 840 Trademark | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus: | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| | | [ ] 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is an action for patent infringement arising out of the patent laws of the United States of America, 35 U.S.C. Section 1, et seq.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE  Joseph J. Farnan, Jr.

DOCKET NUMBER  07-686

DATE  2-26-08

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 8 - - 1 1 8 -

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

2/26/08
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

F. JOYCE /PARCEUS  INC.
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action